Adam B. Wolf (CA # 215914)
PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP
5042 Wilshire Blvd., No. 304
Los Angeles, CA 90036
T: (415) 766-3545
F: (415) 402-0058
awolf@peifferwolf.com

Garret S. DeReus (LA # 35105)*
Andrew D. Bizer (LA # 30396)*
*Applications for admission *pro hac vice* forthcoming
BIZER & DEREUS, LLC
3319 St. Claude Ave.
New Orleans, LA 70117
T: (504) 619-9999
F: (504) 948-9996
gdereus@bizerlaw.com
andrew@bizerlaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| SHARON SWADNER, R. SCOTT SWADNER, and JEFFREY WILLS, | CIV. NO. |
| Plaintiffs, | COMPLAINT |
| vs. | |
| SIXTHMAN LTD, NORWEGIAN CRUISE LINE HOLDINGS, LTD, and KISS CATALOG, LTD, | DEMAND FOR JURY TRIAL |
| Defendants. | |

1
COMPLAINT

Plaintiffs, SHARON SWADNER, R. SCOTT SWADNER, and JEFFREY MILLS, by and through their undersigned counsel, hereby file this Complaint for declaratory and injunctive relief, among other relief, pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, and California's Unruh Civil Rights Act ("Unruh Act"), California Civil Code §§ 51, 52.

## I.    INTRODUCTION

1.    SHARON SWADNER, R. SCOTT SWADNER, and JEFFREY WILLS are persons with disabilities who are devoted fans of the rock 'n' roll band KISS. Plaintiffs consider themselves to be KISS superfans and are part of the so-called "KISS ARMY." Plaintiffs have been going to KISS concerts for decades and regularly travel to attend KISS concerts. Ms. Swadner has limited mobility and cannot stand for long periods of time. Mr. Swadner also has limited mobility and relies on a scooter or wheelchair for mobility. Mr. Wills has spina bifida and uses a manual wheelchair for mobility.

2.    Defendants have been hosting two yearly KISS Kruises since 2011, which consist of five-day long cruises to international destinations, featuring live concerts by KISS and other bands. The KISS Kruises promise an intimate fan experience and non-stop KISS-related activities. Plaintiffs have attended several KISS Kruises since 2016, and they plan to attend many more in the future.

3.    However, Plaintiffs have encountered numerous barriers on these KISS Kruises that have denied them the opportunity for fair and equal enjoyment of the activities on the cruise, specifically the indoor KISS concert and other fan activities. Plaintiffs have repeatedly notified Defendants about these barriers, but Defendants have failed to remove these barriers and provide Plaintiffs with an equal opportunity to participate in the KISS Kruise.

4.     Defendant SIXTHMAN, LTD. ("Sixthman") organizes music-related cruises that allows fans to "party" with their favorite bands on international waters. Sixthman promises "five days of Rock n' Rollin' all Nite and Partying Everyday" on its Kiss Kruises.

5.     Defendant NORWEGIAN CRUISE LINE HOLDINGS LTD. ("Norwegian") owns and operates the Norwegian Pearl and Norwegian Jewel, the cruise ships where the most recent Kiss Kruises have been held.

6.     Defendant KISS CATALOGUE, LTD. is the corporate entity for the band KISS (hereafter KISS CATALOG, LTD. and the band KISS will be interchangeable referred to as "KISS"). KISS is an American rock band. Formed in 1973, KISS is regarded as one of the most influential and bestselling bands of all time. KISS are renowned not only for their music, but also for their KISS-branded merchandise and other KISS-related endeavors, such as the KISS Kruise. The President of KISS's merchandising arm has estimated that in the last fifteen years, KISS has sold more than a half billion dollars in merchandise. Members of KISS attend the KISS Kruise, put on two concerts onboard, and participate in fan events and activities while onboard.

7.     The 2019 and 2021 KISS Kruises were held on the Norwegian Jewel cruise ship and departed from Miami, Florida. In 2022, the KISS Kruise took place on the Norwegian Pearl cruise ship and departed from Los Angeles, California.

8.     Under the ADA and Unruh Act, Defendants are required to make reasonable modifications/accommodation to accommodate persons with disabilities. To the extent Defendant Norwegian was previously unaware of their obligation to accommodate, a 2005 ruling by the United States Supreme Court held that Title III of the ADA applies to foreign-flag cruise ships in United States Water, and specifically to Norwegian cruise ships. *Spector et al. v. Norwegian Cruise Line Ltd.*, 545 U.S. 119 (2005).

9. Norwegian was also subject to a Consent Decree under Title III of the ADA regarding the accessibility of its cruise ships for patrons who use wheelchairs. *See United States of America v. NCL (Bahamas) Ltd. et al.,* No. 10-23844 (S.D. Fl. filed October 25, 2010).

10. On the "Accessible Cruising" page of the KISS Kruise website, Defendants insist that "Sixthman and Norwegian Cruise Lines are committed to ensuring that EVERY guest on board has access to the moments that make life ROCK!"

11. Defendants direct guests who have "special needs" to contact the Sixthman Guest Services prior to booking their cruise to discuss their needs at the time of booking. This information is then sent to Norwegian's Access Desk prior to sailing.

## II. JURISDICTION AND PARTIES

12. This is an action for relief pursuant to Title III of the ADA. This Court is vested with jurisdiction pursuant to 28 U.S.C. § 1331 and 1343. This court is vested with supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367, as this claim arises out of the same case or controversy as the federal claim.

13. Because a substantial part of the claims described *infra* arose in the County of Los Angeles, this case should be assigned to the Western Division of the Central District of California.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Western District of California.

15. Plaintiff SHARON SWADNER is a citizen and resident of Cross Junction, Virginia. She is disabled within the meaning of the ADA. She has primary biliary cholangitis, scoliosis, is a survivor of breast and colon cancer, and experiences extreme fatigue. Ms. Swadner is unable to stand for long periods of time. However, Ms. Swadner brings an associational claim under the ADA because this action pertains to disability

discrimination against individuals who use wheelchairs or other mobility assistive devices. While Ms. Swadner's mobility is limited by her disability, she does not rely on a wheelchair or scooter for mobility.

16.    Plaintiff R. SCOTT SWADNER is a citizen and resident of Cross Junction, Virginia. He is disabled within the meaning of the ADA. Mr. Swadner has a chronic pain disorder that impacts his lower extremities. He cannot put pressure on his legs and is unable to walk without crutches. Mr. Swadner can only stand for a minute or two at a time, and relies on an electric scooter or crutches for mobility. Mr. Swadner and Ms. Swadner are married.

17.    Plaintiff Jeffrey Wills is a citizen and resident of Lexington, Kentucky. He has spina bifida and is disabled within the meaning of the ADA. Mr. Wills relies on a manual wheelchair for mobility. Mr. Wills is Ms. Swadner's brother and Mr. Swadner's brother-in-law.

18.    Defendant SIXTHMAN, LTD is a foreign corporation, organized under the laws of the country of Bermuda, with its principal place of business in Atlanta, Georgia.

19.    Defendant NORWEGIAN CRUISE LINES LIMITED, LTD is a foreign corporation, organized under the laws of the country of Bermuda, with its principal place of business in Miami, Florida.

20.    Defendant KISS CATALOG, LTD is a business corporation organized under the laws of the State of New York, with its principal place of business in New York.

21.    Together, Defendants hold two annual KISS Kruises, where fans of the band KISS can enjoy an immersive experience on Norwegian cruise ships while traveling to international ports. Participants on a KISS Cruise get to attend two concerts by the band KISS with a total of 30 shows onboard each cruise. Fans also get to attend

panels, Q&A sessions, art and memorabilia expositions, autograph sessions, and other activities.

22.   One of the most anticipated events during the cruise is an indoor KISS concert in the intimate 1,042 seat Stardust Theatre. (KISS usually otherwise performs in large sporting arenas and stadiums or at large festivals where tens of thousands of concertgoers attend; it is a rare treat for a KISS fan to see the band in such a small venue). However, as explained in more detail below, Plaintiffs have been unable to enjoy the indoor KISS concert because the Stardust Theatre lacks the requisite number of wheelchair accessible seating spaces and companion seating spaces.

## III.   FACTS

### a.   PLAINTIFFS ENCOUNTER BARRIERS ON THE 2019 KISS KRUISE.

23.   Plaintiffs are dedicated fans of KISS. Ms. Swadner and Mr. Wills attended their first KISS concert on July 16, 1979. Mr. Wills has seen KISS play live approximately fifty times and has been a fan of KISS since he was six years old. Ms. Swadner has been to approximately twenty KISS concerts and would regularly drive Mr. Wills to KISS concerts when they were younger. Mr. Swadner has always been a fan of KISS and first saw KISS live in 2010.

24.   Mr. Wills first attended a KISS Kruise in 2016. Mr. and Ms. Swadner began attending KISS Kruises in 2018.

25.   The main event of each KISS Kruise is the indoor KISS concert held in the Stardust Theatre. There are two indoor KISS concerts, but guests are only allowed to attend one of the indoor concerts. Tickets are limited to two per state room, so Plaintiffs must purchase an additional ticket because they all stay in one room.

COMPLAINT

26.     The 2019 KISS Kruise took place on the Norwegian Pearl cruise ship. The Stardust Theatre on the Norwegian Pearl has 1,042 seats.

27.     During the 2019 indoor KISS concert, all of the wheelchair accessible



seating was located on a platform at the back of the lower deck of the theatre.

28.     Mr. Swadner and Mr. Wills were seated on the so-called "ADA platform" during the 2019 KISS indoor concert (the "Noncompliant Platform"). Ms. Swadner was not provided with companion seating next to her husband and brother, and instead had to sit in the section directly in front of the Noncompliant Platform.



29.    During the 2019 concert, a camera and camera operator were present on the Noncompliant Platform (see photo above), crowding into the space where Mr. Swadner and Mr. Mills were sitting. Mr. Swadner and Mr. Mill's views of the stage were partially blocked by the camera, camera operator, and the other disabled patrons crowded into the Noncompliant Platform.

30.    The presence of the camera and camera operator on the Noncompliant Platform further limited the already scarce wheelchair accessible seats in the Stardust Theatre.

31.    Upon information and belief, the camera operator was employed by Defendant KISS. It is important to note that there are other, non-KISS bands that perform in the Stardust Theater. When those bands play, upon information and belief, there are no cameras and camera operators on the Noncompliant Platform.

32.    Pursuant to Americans with Disabilities Act Accessibility Guidelines ("ADAAG"), an assembly area with 1,042 seats must have 10 wheelchair accessible seats. 2010 ADAAG at 221.2.1.

33.    Upon information and belief, the Stardust Theatre on the Norwegian Jewel in 2019 had fewer than 10 wheelchair accessible seats.

34.    Pursuant to 2010 at ADAAG 221.3, there must be at least one companion seat for each wheelchair accessible seat. Therefore, the Stardust Theatre on the Norwegian Jewel should have had 10 companion seats.

35.    Upon information and belief, the Stardust Theatre on the Norwegian Jewel in 2019 did not have 10 companion seats. It had zero.

36.    Pursuant to 2010 ADAAG at 221.2.3, wheelchair spaces should be dispersed so that spectators are provided with choices of seating locations that are substantially equivalent to, or better than, the choices of seating locations and viewing angles available to all other spectators.

37.    Upon information and belief, the wheelchair seating in the Stardust Theatre is grouped in one location and not dispersed throughout the venue. As can be seen from the seating chart, the wheelchair seating at the Stardust Theatre is located in the absolute worst location—the furthest from the stage.

38.    KISS Kruise guests are able to take photos on stage. Prior to the 2018 cruise, Plaintiffs were informed that the stage would be accessible for photos. However, once on the cruise, Plaintiffs discovered that there were steps up to the stages on the Norwegian Pearl, so Plaintiffs were unable to access the stage for photos. Instead, they had to either take photos in front of a backdrop or on the Noncompliant Platform with the stage on the background.

39.    Many of the fan activities onboard the KISS Kruise take place on the Stardust Theatre stage or pool deck stage. However, as explained above, these stages

have steps and are not accessible for guests who use wheelchairs. Consequently, Mr. Swadner and Mr. Wills were unable to participate in any fan activities that took place on stage during the KISS Kruises.

40.    Furthermore, the off-ship day excursions are inaccessible to the Plaintiffs as they require riding in a so-called "tender boat." The tender boats are not wheelchair accessible and therefore the Plaintiffs cannot take off-ship day excursions.

41.    Following the 2019 KISS Kruise, Ms. Swadner contacted Sixthman to complain about the lack of wheelchair accessible seating at the indoor KISS concert. Mr. Swadner also contacted "Doc" McGhee, KISS's manager, during the KISS Kruises.

42.    Mr. McGhee told Mr. Swadner that he should get a check for $500.00 and that he would "talk to the guys" about what happened during the indoor concert. Months of emails and phone calls followed, and Sixthman finally sent Mr. Swadner a check for $500.00. Sixthman also sent Mr. Mills four plastic decorative records and a few old T-shirts.

43.    Based on the above, both KISS and Sixthman had knowledge of the inadequate wheelchair seating during the indoor KISS concert on the 2019 KISS Kruise.

44.    Plaintiffs were hesitant to attend the next KISS Kruise but still purchased tickets because they had been assured that the barriers they encountered during the indoor KISS concert would be remedied.

**b.  PLAINTIFFS ENCOUNTER BARRIERS ON THE 2021 KISS KRUISE.**

45.    The 2020 KISS Kruise was cancelled due to the COVID-19 pandemic, so the next KISS Kruise Plaintiffs were able to attend was the 2021 cruise.

46.    The 2021 KISS Kruise also took place on the Norwegian Pearl cruise ship.

47.    When Plaintiffs purchased the tickets for the 2021 KISS Kruise, they informed the Sixthman employee that Mr. Swadner and Mr. Mills had mobility

disabilities and would require wheelchair accessible seating along with companion seating.

48.     Plaintiffs were hopeful that the barriers they encountered during the 2019 KISS Kruise during the indoor KISS concert had been addressed and that they would have an equal opportunity to participate in the activities on the KISS Kruise.

49.     Sadly—and unlawfully—they were not. Just like in 2019, the only wheelchair accessible seating available was on the Noncompliant Platform which could hold only approximately five wheelchairs and zero companion seats.

50.     Just like in 2019, a camera and camera operator were placed on the Noncompliant Platform taking up the already limited wheelchair and companion spaces in the Stardust Theater:



51.     Again, Mr. Swadner and Mr. Mills had to share their already limited space with a camera and camera operator hired by KISS.

52.     Ms. Swadner was not given companion seating next to her husband and brother and was again forced to sit in another row.

53.     Plaintiffs were still unable to participate in guest activities that took place on the Stardust Theater or pool deck stage.

### c.  PLAINTIFFS WERE DETERRED FROM ATTENDING THE 2022 KISS KRUISE.

54.     The 2022 KISS Kruise departed from Los Angeles, California and traveled to Cabo San Lucas and Ensenada, Mexico.

55.     The 2022 KISS Kruise took place on the Norwegian Jewel cruise ship, which also has a Stardust Theater with 1,042 seats with the same layout as the Norwegian Pearl.

56.     Pursuant to the KISS Kruise website, there was only one section for wheelchair accessible spaces in the Stardust Theater for the 2022 indoor KISS concert.




57. After their experiences during the indoor KISS concerts on the 2019 and 2021 KISS Kruises, Plaintiffs were weary when making their reservations for the 2022 KISS Kruise.

58. Due to the issues during the indoor concerts during 2019 and 2021 and the insufficient number of wheelchair accessible seats, Plaintiffs called Sixthman prior to making their reservations for the October 29 - November 3, 2022 KISS Kruise to ensure that Mr. Swadner and Mr. Wills would be able to get seats together on the Noncompliant Platform.

59. Plaintiffs informed the Sixthman employee that Mr. Swadner used an electric scooter, and that Mr. Wills used a wheelchair. Plaintiffs requested seats on the Noncompliant Platform for Mr. Swadner and Mr. Mills.

60. Plaintiffs also detailed their past experiences in the Stardust Theater on the previous KISS Kruises. Plaintiffs explained how they had been unable to enjoy the indoor KISS concert due to Defendants' failure to provide adequate accommodations for patrons with mobility disabilities and their companions.

61. During the call, the Sixthman employee assured Plaintiffs that wheelchair accessible seats were reserved for Mr. Swadner and Mr. Mills.

62. After being assured by Sixthman staff that Mr. Swadner and Mr. Mills would have reserved seats in the only wheelchair accessible area in the Theater, Plaintiffs purchased tickets to the 2022 KISS Kruise on March 1, 2022. Plaintiffs also purchased an additional ticket for the indoor KISS concert because their reservation for one cabin only included two tickets to the concert.

63. Plaintiffs then purchased flights to California and reserved an electric scooter for Mr. Swadner to use during the cruise.

64. On September 16, 2022, Ms. Swadner logged into her Sixthman account to review Plaintiffs' reservations for the 2022 KISS Kruise and reserved seats for the

indoor KISS concert. Ms. Swadner was shocked to discover that her husband was not given a reserved seat on the Noncompliant Platform, despite the Sixthman employees' assurances.

65.     Ms. Swadner contacted Sixthman Guest Services to enquire about their failure to assign Mr. Swadner a reserved seat on the Noncompliant Platform. Ms. Swadner was informed that Mr. Swadner was not given a space on the Noncompliant Platform because he was considered Mr. Wills' companion and that companion seating was in the row below.

66.     Ms. Swadner informed the Sixthman employee that Mr. Swadner needed to be seated on the Noncompliant Platform because he uses an electric scooter. The Sixthman employee told Ms. Swadner that they "would do their best" to get Mr. Swadner a seat on the Noncompliant Platform.

67.     The Sixthman employee could not change Mr. Swadner's ticket to the Noncompliant Platform because there were already five wheelchair seats reserved on the Noncompliant Platform and there was no room for Mr. Swadner.

68.     On September 17, 2022, Ms. Swadner emailed Anthony Diaz, CEO of Sixthman, to make him aware of the lack of accessible seating during the indoor KISS concerts on the KISS Kruises. Ms. Swadner informed Mr. Diaz about the issues Plaintiffs were having with the lack of accessible seating during the indoor KISS concerts. Ms. Swadner also requested a full refund for the KISS Kruise tickets they had purchased.

69.     On September 19, 2022, Ms. Swadner emailed Mr. Diaz again seeking an update as to whether their issue with accessible seating during the indoor concert had been resolved. Mr. Diaz responded that he could offer Plaintiffs two tickets [instead of three tickets] to the October 24-29, 2022 KISS Kruise with two reserved seats on the

Noncompliant Platform. Plaintiffs declined this offer because they all wanted to travel together on the same cruise.

70.    Ms. Swadner asked to speak to Sixthman's ADA coordinator but was informed that Sixthman did not have anyone with that title.

71.    Based on Defendants' failure in 2019 and 2021 to provide adequate wheelchair accessible seating during the indoor KISS concert, Plaintiffs were left with no other choice than to cancel their tickets for the 2022 KISS Kruise.

72.    Plaintiffs were unable to get refunds for their flights to California, hotel, or for the rental of Mr. Swadner's mobility scooter. Plaintiffs decided to travel to California as planned but forego attending the KISS Kruise because of Defendants' past violations of the ADA and Defendants' inability to guarantee that Plaintiffs would not again encounter these barriers to access during the 2022 KISS Kruise.

## IV.    CAUSES OF ACTION

### COUNT I: VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT AS TO MR. SWADNER AND MR. MILLS

73.    Mr. Swader and Mr. Mills reallege and reaver all paragraphs as if they were expressly restated herein.

74.    The Norwegian Jewel is a place of public accommodation, subject to the ADA, and is a cruise ship that does not have a permanent address (hereinafter referred to as the "Property").

75.    The KISS Kruise at issue in this action took place on the Property and departed from Los Angeles, California on October 29, 2022.

76.    The Stardust Theater on the Property is an assembly area that has a seating capacity of approximately 1,042 patrons and is open to the general public. The Stardust Theater hosted the indoor KISS concerts for the 2022 KISS Kruises.

77.     Upon information and belief, Defendant Norwegian owns the Property and Defendants Sixthman and KISS operate and/or promote the various events on the Property during the KISS Kruises.

78.     In its management and operation capacity of the Property, Defendants are required to comply with Title III of the ADA.  Defendants meet the definition of a public accommodation, as a private entity that manages or otherwise operates a place of public accommodation, the Stardust Theater on the Norwegian Jewel (a concert hall).  *See* 28 C.F.R.  §  36.104  (defining  "public  accommodation"  and  "place  of  public accommodation").

79.     "Public accommodations and commercial facilities," like the Property at issue in this litigation, "must follow the requirements of … the Title III regulations at 28 CFR part 36, subpart D; and the 2004 ADAAG at 36 CFR part 1191, appendices B and D."

80.     It is well settled that the mandates of Title III of the ADA apply to cruise ships. *Spector et al. v. Norwegian Cruise Line Ltd.*, 545 U.S. 119 (2005).

81.     Plaintiffs desired to take part in the 2022 KISS Kruise and attend the indoor KISS concert. Plaintiffs also desired to take part in various fan events where they would have opportunities to meet and interact with members of the band KISS.

82.     Plaintiffs purchased tickets for the KISS cruise and an additional ticket for the indoor KISS concert. When purchasing the tickets, Plaintiffs spoke with Sixthman Guest Services, explained their need for accommodations, and specifically requested wheelchair accessible seating for Mr. Swadner and Mr. Mills.

83.     However, when seat assignments were released for the indoor KISS concert, Plaintiffs discovered that Mr. Swadner was not given a wheelchair accessible seat. When Plaintiffs made Sixthman aware of this failure, Defendants were unable to

offer Mr. Swadner a wheelchair accessible seat because the Stardust Theater does not have the required number of wheelchair seating per ADA guidelines.

84.    Under the ADA, a public accommodation is required to modify its policies, practices, or procedures to mitigate any disparate impact upon persons with disabilities. 28 CFR § 36.302(a).

85.    Public accommodations must also take affirmative measures to ensure that such persons have an equal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that are available from that public accommodation. 42 U.S.C. § 12182; 28 CFR §§ 36.202(b), 36.201(a), 36.203(a), 36.302(a).

86.    The ADA's implementing regulations contain specific mandates for public accommodations regarding ticketing, accessible seating, and ticket sales. 28 CFR § 36.302(f).

87.    Pursuant to the ADAAG, an assembly area with 1,042 seats must have 10 wheelchair accessible seats. 2010 ADAAG at 221.2.1.

88.    Upon information and belief, the Stardust Theatre on the Property did not have 10 wheelchair accessible seats.

89.    Pursuant to 2010 ADAAG 221.3, there must be at least one companion seat for each wheelchair accessible seat.

90.    Upon information and belief, the Stardust Theatre on the Property did not have the legally required number of companion seats.

91.    The Stardust Theatre on the Property should have had, but did not have, 10 wheelchair accessible seats plus 10 companion seats.

92.    Upon information and belief, there was not enough room on the Noncompliant Platform to provide companion seating for Ms. Swadner.

93.   Pursuant to 2010 ADAAG at 221.2.3, wheelchair spaces should be dispersed so that spectators are provided with choices of seating locations that are substantially equivalent to, or better than, the choices of seating locations and viewing angles available to all other spectators.

94.   Upon information and belief, the wheelchair seating in the Stardust Theatre is grouped in one location and not dispersed throughout the venue. As can be seen from the seating chart, the wheelchair seating at the Stardust Theatre is located in the absolute worst location as it is located the furthest from the stage.

95.   By failing to provide the lawfully required amount of wheelchair accessible seating, wheelchair accessible seating for disabled individuals on all levels, and companion wheelchair seating in the Stardust Theater during the 2022 indoor KISS concert, Defendants effectively precluded wheelchair users such as Mr. Swadner and Mr. Mills from obtaining the same benefits available to ambulatory patrons, in violation of 28 CFR §§ 36.201(a), 36.202(b), 36.204, 36.302(a), and 36.302(f).

96.   By failing to hold certain fan events and picture opportunities on areas accessible to wheelchair users, Defendants effectively precluded wheelchair users such as Mr. Swadner and Mr. Mills from obtaining the same benefits available to ambulatory patrons, in violation of 28 CFR §§ 36.201(a), 36.202(b), 36.204, 36.302(a), and 36.302(f).

97.   During the indoor KISS concerts and other fan events, Mr. Swadner and Mr. Mills were further discriminated against by being subjected to the humiliation, fear, and anxiety of not being provided with adequate wheelchair accessible seating on the Noncompliant Platform.

98.   Plaintiffs fear that if they attend another KISS Kruise or any other KISS event hosted by Defendants, they would again be subjected to discrimination on the basis of their disabilities.

99.     Although Plaintiffs did not attend the 2022 KISS Kruise, Title III of the ADA does not "require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." 42 U.S.C. § 12188; *Pickern v. Holiday Quality Foods, Inc.,* 293 F.3d 1133, 1136-37 (9th Cir. 2002) ("under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury," and "[s]o long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues").

100.    Plaintiffs intend on attending the next KISS Kruise because they love KISS.

101.    The ADA outlaws not just intentional discrimination but also certain practices that have a disparate impact upon persons with disabilities even in the absence of any conscious intent to discriminate. Thus, a public accommodation may not "utilize standards or criteria or methods of administration that have the *effect* of discriminating on the basis of disability, or that perpetuate the discrimination of others who are subject to common administrative control." 28 C.F.R. § 36.204 (emphasis added).

102.    Within reason, a public accommodation may be required to modify its policies, practices, or procedures to mitigate any disparate impact upon persons with disabilities. 28 C.F.R. § 36.302(a).

103.    Public accommodations must also take affirmative measures to ensure that such persons have an equal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that are available from that public accommodation. 42 U.S.C. § 12182; 28 C.F.R. §§ 36.202(b), 36.201(a).

104.   Mr. Swadner and Mr. Wills reasonably anticipate that when they attend the next KISS Kruise, there will not be sufficient wheelchair accessible seating or companion seating for the indoor KISS concert. Defendants' failure to provide the requisite number of wheelchair accessible seats, companion seats, or vertically dispersed accessible seating to wheelchair users has a disparate impact on disabled patrons, including Plaintiffs.

105.   Mr. Swadner and Mr. Wills also reasonably anticipate that when they attend the next KISS Kruise, many of the fan events where audience members are randomly selected to interact with KISS band members will, as before, take place on the Stardust Theatre stage or pool stage, which are both inaccessible to wheelchair users. Defendants' failure to provide opportunities for fans with mobility disabilities to have unscheduled interactions with KISS band members has had, and will continue to have, a disparate impact on disabled patrons, including Plaintiffs.

106.   Upon information and belief, modification of the currently offered accessible seating and location of the fan events is reasonable, possible, and would provide Mr. Swadner and Mr. Wills with an equal opportunity to participate in, or benefit from, the goods, services, and accommodations which Defendants offer to the general public.

107.   Mr. Swadner and Mr. Wills have been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have their reasonable attorneys' fees, costs, and expenses paid by Defendants pursuant to 42 U.S.C. § 12205.

## COUNT II: VIOLATION OF TITLE III OF THE
## AMERICANS WITH DISABILITIES ACT AS TO MS. SWADNER

108.   Ms. Swadner repeats and realleges all paragraphs of the complaint, as if fully set forth herein.

109.   Ms. Swadner brings her claim under Title III of the ADA for associational discrimination.

110.   Title III of the ADA prohibits associational discrimination. Pursuant to 42 USC 12182 (b)(1)(E):

> It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

111.   Ms. Swadner is married to Mr. Swadner and is Mr. Will's sister. Ms. Swadner accompanied Mr. Swadner and Mr. Mills on the KISS Kruises. Ms. Swadner assists Mr. Swadner and Mr. Wills while they attended the KISS Kruises and anticipated assisting them during the 2022 KISS Kruise.

112.   Ms. Swadner has suffered a specific, direct, and separate injury from the injury suffered by Mr. Swadner and Mr. Mills

113.   Ms. Swadner considers herself a member of the KISS ARMY and has been going to KISS concerts with Mr. Wills since 1979. Ms. Swadner wanted to attend the once-a-year KISS Kruise with her husband and brother and be able to enjoy the indoor KISS concert with them.

114.   Due to Defendants' discriminatory actions, Ms. Swadner was deterred from attending the 2022 KISS Kruise.

115.   Ms. Swadner spent countless hours contacting Defendants and corresponding with their employees to notify them of the barriers Plaintiffs encountered on the KISS Kruises. Ms. Swadner informed Sixthman guest services when they failed to provide Mr. Swadner and Mr. Wills with reserved wheelchair accessible seats, yet

Defendants' employees/contractors refused to accommodate Ms. Swadner and her family.

116.   Ms. Swadner was directly discriminated against as a result of her known association with Mr. Swadner and Mr. Mills. Among other examples, Ms. Swadner was unable to attend the 2022 KISS Kruise with her family due to Defendants' discriminatory actions.

117.   Pursuant to 2010 at ADAAG 221.3, there must be at least one companion seat for each wheelchair accessible seat.

118.   Upon information and belief, the Stardust Theatre on the Property did not have 10 companion seats.

119.   Therefore, the Stardust Theatre on the Property should have had 10 wheelchair accessible seats -plus- 10 companion seats.

120.   Upon information and belief, there was not enough room on the Noncompliant Platform to provide companion seating for Ms. Swadner.

121.   Ms. Swadner was discriminated against by not being able to sit with her husband and brother during the concert. There is simply no analogous experience to which an ambulatory patron could have been subjected; no adequate comparison can be made for ambulatory individuals.

122.   Due to Defendants' discriminatory actions, Ms. Swadner experienced frustration, emotional distress, embarrassment, anxiety, and fear as a result of the discrimination.

**COUNT III: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT**

123.   Plaintiffs repeat and reallege all paragraphs of the complaint, as if they are fully set forth herein.

124.   The Unruh Civil Rights Act, California Civil Code 51(b), provides that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

125.   The Stardust Theatre and Norwegian Jewel cruise ship are business establishments within the meaning of the Unruh Act. Defendant Norwegian is the owner of the business and Defendants Sixthman and KISS are the operators of the business establishment.

126.   By departing from the Port of Los Angeles, Defendants offer people within the jurisdiction of California the services, programs, and activities on their KISS Kruises.

127.   Despite being put on notice that they did not provide sufficient wheelchair accessible seating during previous indoor KISS concerts, Defendants continue to exclude Plaintiffs from full and equal access to the indoor KISS concert and other fan events on their KISS Kruises. Plaintiffs have been provided services that are inferior to the services provided to non-disabled individuals. Defendants' failure and refusal to correct the barriers to full and equal access to their KISS Kruises for Plaintiffs constitutes intentional discrimination.

128.   Defendants violated the Unruh Act by their acts and omissions, as follows:

a.   Failure to modify their policies and procedures as necessary to ensure Plaintiffs full and equal access to their accommodations, advantages, facilities, privileges, or services at the Stardust Theatre, and ticketing for accessible seating at the Stardust Theater;

b. Violation of the ADA, a violation of which is a violation of the Unruh Act. Cal. Civil Code § 51(f).

129. Plaintiffs have experienced numerous barriers to access at the Property, which has caused them major difficulty, discomfort and embarrassment. Plaintiffs are entitled to statutory damages.

130. On information and belief, the accessible features of the Stardust Theater and other fan events on the KISS Kruises have not been improved since Plaintiffs' most recent trip on a KISS Kruise.

131. These barriers to access render the Stardust Theater inaccessible to and unusable by persons with mobility disabilities. All facilities must be brought into compliance with all applicable federal and state code requirements.

132. Further, each violation of the ADA also constitutes a separate and distinct violation of California Civil Code § 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code § 52(a).

133. Plaintiffs' injuries are ongoing and will continue so long as Defendants do not modify their policies and procedures and provide fully accessible facilities for Plaintiffs and other persons with mobility disabilities.

134. Defendants have continued their illegal and discriminatory policies and practices despite actual knowledge that people with mobility disabilities, including Plaintiffs, attempt to patronize the Stardust Theater and other KISS fan events on the KISS Kruises, and encounter illegal barriers that limit or deny full and equal access when they do so. Although Plaintiffs have complained to several different employees (including, on information and belief, managerial employees of Defendants) about the lack of accessible seating during the indoor KISS concert and other fan activities, on

information and belief, no access improvements were made as a result of complaints made by Plaintiffs.

135.   At all times herein mentioned, Defendants knew, or in the exercise of reasonable diligence should have known, that their barriers, policies and practices at their facilities violated disability access requirements and standards, and discriminated against Plaintiffs and upon other persons with mobility disabilities, but Defendants have failed to rectify the violations, and presently continue a course of conduct in maintaining policies, practices and physical access barriers that discriminate against Plaintiffs and similarly situated persons with mobility disabilities.

136.   Plaintiffs had actual knowledge that the Stardust Theater on the Norwegian Jewel did not have sufficient wheelchair accessible seating for the indoor KISS concert based on their conversations with Sixthman's employees and their past experiences on the 2019 and 2021 KISS Kruises.

137.   Plaintiffs knew that without reserved wheelchair accessible seating during the 2022 indoor KISS concert, they would have been denied full and equal access to the KISS Kruise. Plaintiffs also knew that if the KISS camera and camera man were positioned on the Noncompliant Platform, as they consistently have been in the past, their view of the stage would be blocked.

138.   Plaintiffs' decision to cancel their tickets to the 2022 KISS Kruise was reasonable because of their experiences on the 2019 and 2021 cruises and Defendants' past failures to remove barriers to access.

## V. RELIEF REQUESTED

WHEREFORE, Plaintiffs demand judgment against Defendants, and request that the Court:

    A.    Award Plaintiffs' actual and/or statutory damages under the Unruh Act;

B.   Declare that Defendants' policies, procedures, and services have been provided in a discriminatory manner which violates the ADA and Unruh Act;

C.   Declare that Defendants failed to provide Plaintiffs with a reasonable accommodation/modification;

D.   Require Defendants to bring their application and transportation services into compliance and remain in compliance with the requirements of the ADA and Unruh Act;

E.   Supervise the injunctive relief entered and ensure that Defendants comply with the requested injunctive relief within a reasonable period of time, to be determined by this Court;

F.   Award reasonable attorneys' fees and costs (including expert fees) and other expenses of suit; and

G.   Award such other and further relief as it deems necessary, just, proper, and appropriate.

Dated: March 17, 2023                    Respectfully submitted,

Adam B. Wolf (CA # 215914)
PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP
5042 Wilshire Blvd., No. 304
Los Angeles, CA 90036
T: (415) 766-3545
F: (415) 402-0058
awolf@peifferwolf.com

Garret S. DeReus (LA # 35105)*
Andrew D. Bizer (LA # 30396)*
*Applications for admission *pro hac vice*

26
COMPLAINT

forthcoming
BIZER & DEREUS, LLC
3319 St. Claude Ave.
New Orleans, LA 70117
T: (504) 619-9999
F: (504) 948-9996
gdereus@bizerlaw.com
andrew@bizerlaw.com

*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully request a jury trial for all claims and issues so triable.

Dated: March 17, 2023                    Respectfully submitted,

_____
Adam B. Wolf (CA # 215914)
PEIFFER WOLF CARR KANE
    CONWAY & WISE, LLP
5042 Wilshire Blvd., No. 304
Los Angeles, CA 90036
T: (415) 766-3545
F: (415) 402-0058
awolf@peifferwolf.com

Garret S. DeReus (LA # 35105)*
Andrew D. Bizer (LA # 30396)*
*Applications for admission *pro hac vice*
    forthcoming
BIZER & DEREUS, LLC
3319 St. Claude Ave.
New Orleans, LA 70117
T: (504) 619-9999
F: (504) 948-9996
gdereus@bizerlaw.com
andrew@bizerlaw.com
*Attorneys for Plaintiffs*

27
COMPLAINT